| Fill in this information to identify the case: | |
|---|---|
| Debtor names: | **PINNACLE GRINDING AND GROOVING, LLC** |
| United States Bankruptcy Court for the: | DISTRICT OF NEVADA |
| Case number: | BK-N-24-50103-HLB |

☐ Check if this is an amended filing

Official Form 425A

Plan of Reorganization for Small Business Under Chapter 11     02/20

**SMALL BUSINESS PLAN OF REORGANIZATION FOR PINNACLE GRINDING AND GROOVING, LLC**

**Background for Cases Filed Under Subchapter V**

   **A. Description and History of the Debtor's Business**

PINNACLE GRINDING AND GROOVING, LLC ("Debtor"), a Nevada limited liability corporation, is a contractor that provides construction services related to large scale highway construction and reconstruction across the Country. Historically, Debtor's services included grinding and grooving work, including rumble strips. More information about Debtor's business can be found at www.pinnaclegrinding.com. Debtor expanded its line of business from grinding and grooving to add striping, which required the purchase of new equipment. Unfortunately, the equipment Debtor purchased was damaged in an accident on the way to the Debtor's first striping job. It later had numerous significant maintenance issues that prevented the Debtor from launching that aspect of the business as planned. Prior to that time, Debtor had incurred substantial debts related to the COVID-19 pandemic and to acquire the striping equipment. When the new debt was added to Debtor's obligations, but Debtor was not able to operate its striping business, the overall debt load became unmanageable and led to defaults on various payment obligations and lawsuits against Debtor. This case was filed to allow Debtor to restructure its debt obligations and remain in business.

   **B.    Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis for Debtor is attached to the Plan as Exhibit **1**.

   **C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

Debtor has provided projected financial information as Exhibit **2**.

Debtor will fund the Plan by contributing his "Disposable Income" (as defined by § 1191(d) of the Bankruptcy Code) for a period of 60-months. The Plan Proponent's financial projections show Debtor will have projected disposable income for the period described in § 1191(c)(2) of $2,500 per month.

The final Plan payment is expected to be paid on **July 31, 2029**.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1: Summary**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **PINNACLE GRINDING AND GROOVING, LLC** from cash flow from operations of Debtor's businesses.

This Plan provides for:    8 classes of secured claims;
                                  1 class of non-priority unsecured claims; and
                                  1 class of equity security holders.

Non-priority unsecured creditors holding allowed claims in Debtor's case will receive distributions, which the

Case 24-50103-hlb    Doc 57    Entered 05/01/24 17:35:34    Page 2 of 17

| Debtor | PINNACLE GRINDING AND GROOVING, LLC | Case number (*if known*) | 24-50103-hlb |
|---|---|---|---|
| | Name | | |

proponent of this Plan has valued at 3.5 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of his claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

2.01  **Class 1…………....**    The claim of *Heritage Bank of Nevada, a Division of Glacier Bancorp* (POC #21-1), to the extent allowed as a secured claim under § 506 of the Code.

2.02  **Class 2…………....**    The claim of *GreatAmerica Financial Services Corporation* (POC #23-1), to the extent allowed as a secured claim under § 506 of the Code.

2.03  **Class 3…………....**    The claim of *U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance* (POC #10-1) to the extent allowed as a secured claim under § 506 of the Code.

2.04  **Class 4…………....**    The claim of *United States Small Business Administration* (Schedule D Line 2.7), to the extent allowed as a secured claim under § 506 of the Code.

2.05  **Class 5…………....**    The claim of *Channel Partners Capital, LLC* (POC #20-1), to the extent allowed as a secured claim under § 506 of the Code.

2.06  **Class 6…………....**    The claim of *First-Citizens Bank & Trust Company* (POC #1-1), to the extent allowed as a secured claim under § 506 of the Code.

2.07  **Class 7…………....**    The claim of *First-Citizens Bank & Trust Company* (POC #2-1), to the extent allowed as a secured claim under § 506 of the Code.

2.08  **Class 8…………....**    The claim of *Pawnee Leasing Corporation* (POC #19-1), to the extent allowed as a secured claim under § 506 of the Code.

2.09  **Class 9…………....**    The claims of all non-priority unsecured claims allowed under § 502 of the Code.

2.10  **Class 10…………....**    Equity interests in the Debtor.

### Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees

3.01  **Unclassified claims**    Under § 1123(a)(1), administrative expense and priority tax claims are not in classes.

3.02  **Administrative expense claims**    Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full with § 1129(a)(9)(C) of the Code on the latter of: (1) the Effective Date; or (2) within 15-days after entry of an order approving and allowing an administrative priority claim in this case; or as otherwise agreed between the reorganized debtor and the holder of an allowed administrative expense claim.

3.03  **Priority tax claims**    Each holder of a priority tax claim will be paid in full with interest at the applicable statutory rate. Any allowed priority tax claim shall be fully amortized over a period commencing on the Effective Date of the Plan and concluding on January 31, 2029, which is the 60-month anniversary of the Petition Date. Commencing on the Effective Date, the reorganized debtor shall make fully amortized monthly payments sufficient to pay all allowed priority tax claims in full by January 31, 2029.

3.04  **Statutory fees**    All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date.

| Debtor | PINNACLE GRINDING AND GROOVING, LLC | Case number (*if known*) | 24-50103-hlb |
|---|---|---|---|
| | Name | | |

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01  Claims and interests shall be treated as follows under this Plan:**

| *Class* | *Impairment* | *Treatment* |
|---|---|---|
| Class 1:<br><br>**HERITAGE BANK OF NEVADA, A DIVISION OF GLACIER BANCORP** | ☒ Impaired<br>☐ Unimpaired | The Class 1 claim is fully-secured and, in accordance with § 506(a)(1) of the Code, and shall be paid in full, with interest fixed at the current contractual rate of 11.25%, over 60-months. Commencing on the Effective Date, the reorganized debtor shall make fully amortized monthly payments to the Class 1 claimholder based on the then outstanding balance of the Class 1 Claim, for a period of 60-months in full satisfaction of the Class 1 claim. |
| Class 2:<br><br>**GREATAMERICA FINANCIAL SERVICES CORPORATION** | ☒ Impaired<br>☐ Unimpaired | The Class 2 Secured Claim of *GreatAmerica Financial Services Corporation* is under-secured and, in accordance with § 506(a)(1) of the Code, shall be bifurcated into: (1) a secured claim in the amount of $325,000, the value of the Class 2 claimholders collateral (the "Class 2 Secured Claim"); and (2) an unsecured claim in the amount of $61,669 (the "Class 2 Unsecured Claim").  The Class 2 Secured Claim shall be paid in full, with interest fixed at the rate provided for in the contract between Debtor and the Class 2 claimholder, through fully amortized payments over 60-months.  Commencing on the Effective Date, the reorganized debtor shall make said fully amortized monthly payments to the Class 2 for 60-months in full satisfaction of the Class 2 Secured Claim.  The Class 2 Unsecured Claim shall be reclassified to Class 9 under this Plan and shall only maintain the rights of a Class 9 non-priority unsecured claim under this Plan. |
| Class 3:<br><br>**U.S. BANK, N.A. D/B/A U.S. BANK EQUIPMENT FINANCE** | ☒ Impaired<br>☐ Unimpaired | The Class 3 claim of *U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance* is under-secured and, in accordance with § 506(a)(1) of the Code, shall be bifurcated into: (1) a secured claim in the amount of $50,000, the value of the Class 3 claimholders collateral (the "Class 3 Secured Claim"); and (2) an unsecured claim in the amount of $16,896 (the "Class 3 Unsecured Claim").  The Class 3 Secured Claim shall be paid in full, with interest fixed at the rate provided for in the contract between Debtor and the Class 3 claimholder, through fully amortized payments over 60-months.  Commencing on the Effective Date, the reorganized debtor shall make said fully amortized monthly payments to the Class 3 for 60-months in full satisfaction of the Class 3 Secured Claim.  The Class 3 Unsecured Claim shall be reclassified to Class 9 under this Plan and shall only maintain the rights of a Class 9 non-priority unsecured claim under this Plan. |
| Class 4:<br><br>**UNITED STATES SMALL BUSINESS ADMINISTRATION** | ☒ Impaired<br>☐ Unimpaired | The Class 4 claim of *United States Small Business Administration* is under-secured and, in accordance with § 506(a)(1) of the Code, shall be bifurcated into: (1) a secured claim in the amount of $179,865, the value of the Class 4 claimholders collateral (the "Class 4 Secured Claim"); and (2) an unsecured claim in the amount of $920,134.82 (the "Class 4 Unsecured Claim").  The Class 3 Secured Claim shall be paid in full, with interest fixed at the rate provided for in the contract between Debtor and the Class 3 claimholder, through fully amortized payments over 60-months.  Commencing on the Effective Date, the reorganized debtor shall make said fully amortized monthly payments to the Class 3 for 60-months in full satisfaction of the Class 3 Secured Claim.  The Class 3 Unsecured Claim shall be reclassified to Class 9 under this Plan and shall only maintain the rights of a Class 9 non-priority unsecured claim under this Plan. |

| Debtor | **PINNACLE GRINDING AND GROOVING, LLC** | Case number (*if known*) | **24-50103-hlb** |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| Class 5:<br><br>**CHANNEL PARTNERS CAPITAL, LLC** | ☒ Impaired<br>☐ Unimpaired | The Class 5 claim of *Channel Partners Capital, LLC* is under-secured and, in accordance with § 506(a)(1) of the Code, shall be bifurcated into: (1) a secured claim in the amount of $30,000, the value of the Class 5 claimholders collateral (the "Class 5 Secured Claim"); and (2) an unsecured claim in the amount of $19,715.19 (the "Class 5 Unsecured Claim"). The Class 5 Secured Claim shall be paid in full, with interest fixed at the rate provided for in the contract between Debtor and the Class 5 claimholder, through fully amortized payments over the remaining original contractual term of the loan underlying the Class 5 claim. Commencing on the Effective Date, the reorganized debtor shall make said fully amortized monthly payments to the Class 5 in full satisfaction of the Class 5 Secured Claim. The Class 5 Unsecured Claim shall be reclassified to Class 9 under this Plan and shall only maintain the rights of a Class 9 non-priority unsecured claim under this Plan. |
| Class 6:<br><br>**FIRST-CITIZENS BANK & TRUST COMPANY** | ☒ Impaired<br>☐ Unimpaired | The allowed Class 6 claim of *First Citizens Bank & Trust Company* is wholly unsecured pursuant to § 506(a)(1) of the Code by virtue of superior priority liens exceeding the value of Debtor's assets and the Class 6 collateral. The Class 6 claim is hereby reclassified to a Class 6 non-priority unsecured claims and shall be treated in accord with the treatment of Class 6 claims under this Plan. Within 15-days of the Effective Date, each Class 6 claimholder shall take all actions necessary to release its unsecured lien, including, but limited to, filing a UCC-3 termination statement with the Secretary of State for the State of Nevada. |
| Class 7:<br><br>**FIRST-CITIZENS BANK & TRUST COMPANY** | ☒ Impaired<br>☐ Unimpaired | The Class 7 claim of *First Citizens Bank & Trust Company* is under-secured and, in accordance with § 506(a)(1) of the Code, shall be bifurcated into: (1) a secured claim in the amount of $150,000, the value of the Class 7 claimholders collateral (the "Class 7 Secured Claim"); and (2) an unsecured claim in the amount of $51,469.18 (the "Class 7 Unsecured Claim"). The Class 7 Secured Claim shall be paid in full, with interest fixed at the rate provided for in the contract between Debtor and the Class 7 claimholder, through fully amortized payments over the remaining original contractual term of the loan underlying the Class 7 claim. Commencing on the Effective Date, the reorganized debtor shall make said fully amortized monthly payments to the Class 7 in full satisfaction of the Class 7 Secured Claim. The Class 7 Unsecured Claim shall be reclassified to Class 9 under this Plan and shall only maintain the rights of a Class 9 non-priority unsecured claim under this Plan. |
| Class 8:<br><br>**PAWNEE LEASING CORPORATION** | ☒ Impaired<br>☐ Unimpaired | The Class 8 claim of *Pawnee Leasing Corporation* is under-secured and, in accordance with § 506(a)(1) of the Code, shall be bifurcated into: (1) a secured claim in the amount of $97,751, the value of the Class 8 claimholders collateral (the "Class 8 Secured Claim"); and (2) an unsecured claim in the amount of $282,249 (the "Class 8 Unsecured Claim"). The Class 8 Secured Claim shall be paid in full, with interest fixed at the rate provided for in the contract between Debtor and the Class 8 claimholder, through fully amortized payments over the remaining original contractual term of the loan underlying the Class 8 claim. Commencing on the Effective Date, the reorganized debtor shall make said fully amortized monthly payments to the Class 8 in full satisfaction of the Class 8 Secured Claim. The Class 8 Unsecured Claim shall be reclassified to Class 9 under this Plan and shall only maintain the rights of a Class 9 non-priority unsecured claim under this Plan. |

| Debtor | PINNACLE GRINDING AND GROOVING, LLC | Case number (*if known*) | 24-50103-hlb |
|---|---|---|---|
| | Name | | |

| Class 9:<br><br>**NON-PRIORITY GENERAL UNSECURED CREDITORS**<br><br>The allowed Class 9 claims are listed in *Exhibit 3*, hereto | ☒ Impaired<br><br>☐ Unimpaired | Each holder of a Class 9 non-priority unsecured Allowed Claim shall receive their pro rata share of Debtor's Disposable Income, after the payment in full of Administrative Claims, through the end of the Plan Term (the "Class 9 Plan Dividend"). Any portion of a Class 9 non-priority general unsecured claim in excess of the Class 9 Plan Dividend shall be discharged in accordance with Article 9 of this Plan. |
|---|---|---|
| Class 10:<br><br>**EQUITY INTEREST HOLDERS** | ☒ Impaired<br><br>☐ Unimpaired | Class 10 Equity security holders of Debtor shall retain their interests in the Debtor, but shall receive no disbursement on account of such equity interest during the Plan Term. |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed Claim** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
|---|---|---|
| 5.02 | **Allowed Claim** | An *allowed claim* is a claim:<br><br>(i)  as to which a proof of claim has been filed with the Court within the time fixed by the Court or, if such claim arises from the Debtor's rejection of an unexpired lease or other executory contract, within thirty (30) days after the Effective Date of the Plan, or<br><br>(ii) which is scheduled as of the Confirmation Date of the Plan in the schedules filed by the Debtor, or amended by the Debtor as of said date, and is liquidated in amount and undisputed; and<br><br>(iii) in either of the two above events, as to which no objection to allowance of such claim or request for subordination thereof has been filed within any applicable time period fixed by the Court or as to which an order allowing such claim and establishing their priority has become final and non-appealable.<br><br>(an "Allowed Claim") |
| 5.03 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.04 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assume, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:<br><br>Lease Agreement with SFG CAPITAL LLC for Office Space at 275 Hill Street, Suite 220, Reno, NV 89501 |
|---|---|---|

(b) The Debtor rejects the following executory contracts and unexpired leases as of the Effective Date:

> Lease Agreement with UKG HOLDINGS LLC for Empty lot at 0 Elanor Tinsley Way, Houston, TX 77023
>
> and
>
> Lease Agreement with VCS HOLDINGS LLC for shop at 2301 Elanor Tinsley Way, Houston, TX 77023

(c) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

(d) A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 14 days after the date of the order confirming this Plan.

### Article 7: Means for Implementation of the Plan

**7.01 Funding Plan Payments**  Debtor will use its Disposable Income during the Plan Term, cash on hand, and profits from the operation of its business to fund the Plan. Commencing on the Effective Date of this Plan, Debtor's Disposable Income will be disbursed on a quarterly basis and used to fund Debtor's required Plan payments to allowed Class 9 Non-priority general unsecured creditors in the manner set forth in Section 7.02 of this Plan. Projections of Debtor's Disposable Income are set forth in Exhibit 2, hereto.

**7.02 Order of Distribution of Debtor's Disposable Income.**  During the Plan Term, Debtor's Disposable Income shall be disbursed on a quarterly basis to Class 9 Non-Priority General Unsecured Claims through the end of the Plan Term (§4.01).

**7.03 Disbursing Agent**  The Reorganized Debtor will serve as disbursing agents and shall disburse all property to be distributed under the Plan. The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

**7.04 Post-Confirmation Default**  In the event Debtor becomes delinquent on its obligations under the Plan, the affected creditor or creditors shall provide written notice of such default to the Debtor and Debtor's Counsel via email as follows:

Kevin A. Darby, Esq.:    kevin@darbylawpractice.com; and

Pinnacle Grinding and Grooving, LLC:    travis@pinnaclegrinding.com
(Attn: Travis Brandt)

Debtor shall have fifteen (15) days from receipt of said notice to cure the default. If the Debtor fails within fifteen (15) calendar days after the date of the email of the notice of default to cure the default, then Debtor is in "Material Default" under the Plan to all the members of the affected class and the applicable creditor(s) may pursue any and all rights and remedies it may have under contract(s) between the parties and/or applicable law, as modified by this Plan, and without further action by or proceedings in the

| Debtor | PINNACLE GRINDING AND GROOVING, LLC | Case number (*if known*) | 24-50103-hlb |
|---|---|---|---|
| | Name | | |

Bankruptcy Court. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to chapter 7; or (ii) without further order of the Bankruptcy Court, has relief from automatic stay or the Confirmation Order, to the extent necessary, and may pursue its lawful remedies to enforce and collect the obligations owing to it under the Plan.

### Article 8: General Provision

**8.01 Definitions and rules of construction**
The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: none

**8.02 Effective Date**
The Effective Date of this Plan is the first business day following the date that is 15-days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

**8.03 Plan Term**
The Plan Term shall be 60-months commencing on the Effective Date of the Plan.

**8.04 Severability**
If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.05 Binding Effect**
The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.06 Captions**
The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.07 Controlling Effect**
Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.08 Injunction**
From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that hold a Claim are permanently enjoined from taking any of the following actions on account of any such Claims based on a prepetition default by Debtor: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or his Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or his respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or his respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or his respective property; or (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

| 8.09 | **Exculpation** | From the Petition Date through the Effective Date, the Debtor and his agents and employees shall not have any liability to the Debtor or any other claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects, such persons will be entitled to rely on the advice of counsel with respect to his duties and responsibilities with respect to the Chapter 11 Case and the Plan. |
|---|---|---|
| 8.10 | **Retention of Jurisdiction** | The Bankruptcy Court shall retain jurisdiction for the following specific purposes:<br><br>(A) For the purpose specified in § 1142 of the Bankruptcy Code;<br><br>(B) The consideration of claims and such objections as may be filed to the claims of creditors pursuant to § 502 of the Bankruptcy Code, and to file and prosecute any counterclaims against such creditors;<br><br>(C) The fixing of compensation for the parties entitled thereto;<br><br>(D) To hear and determine the amount of all encumbrances or the recovery of any preferences, transfers, assets or damages to which the Debtor' estate may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law;<br><br>(E) To hear and decide all causes of action now held by the Debtor, or disclosed in the Plan or Disclosure Statement;<br><br>(F) To hear and decide all adversary proceedings or contested matters currently pending in the Bankruptcy Court, or which may be filed prior to or after plan confirmation;<br><br>(G) To resolve any disputes regarding interpretation of the Plan;<br><br>(H) To implement the provisions of the Plan, including all provisions in the Plan which specify the retention of jurisdiction, and to make such further orders as will aid in consummation of the Plan, including the sale of any property after Plan confirmation;<br><br>(I) To modify this Plan in accordance with § 1127 of the Bankruptcy Code;<br><br>(J) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; and<br><br>(K) Enter a final decree and order closing the case. |

### Article 9: Discharge

| 9.1 | **Discharge for Debtor** | If this Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that Debtor will not be discharged of any debt:<br><br>(i)    imposed by this Plan; or<br><br>(ii)   to the extent provided in § 1141(d)(6).<br><br>If this Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all |
|---|---|---|

Case 24-50103-hlb    Doc 57    Entered 05/01/24 17:35:34    Page 9 of 17

| Debtor | PINNACLE GRINDING AND GROOVING, LLC | Case number (*if known*) | 24-50103-hlb |
|---|---|---|---|
| | Name | | |

payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Article 10: Other Provisions

(A) The occurrence of the Effective Date shall operate to disallow and expunge any claims of any creditor who received actual notice of the Chapter 11 Case and that: (a) were not listed on the Debtor's filed bankruptcy schedules and for which no proof of claim was filed on or prior to April 11, 2024, or in the case of governmental entities July 30, 2024, (the "Bar Date"); (b) were listed on the Debtor's schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed on or prior to the Bar Date; or (c) are the subject of a proof of claim for a pre-petition claim that was filed after the Bar Date. Any creditor who failed to file a proof of claim on or before the Bar Date, shall be barred from participating in any distribution under the Plan, and the Debtor shall have no further liability for such claim.

(B) Following the Effective Date, the Debtor may continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor without further order of the Court.

(D) The estate shall be deemed to be fully administered upon the commencement of distributions to administrative creditors.

(E) The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

(F) The Plan may be modified post-confirmation in accordance with §1193 of the Bankruptcy Code.

(G) Debtor may prepay any allowed claims under the Plan in advance and without prepayment penalty.

(H) The Reorganized Debtor shall make all payments required under the Plan to creditors himself and directly.

(I) The Subchapter V Trustee shall be entitled to reasonable compensation of fees for services rendered and reimbursement of actual and necessary expenses incurred through the Effective Date of the Plan, which shall constitute and administrative priority expense and shall be paid in accordance with Section 3.02 of this Plan.

(J) All allowed secured claimholders shall release his liens or reconvey his deed of trust within 30-days of receiving his last payment made under the Plan.

(K) All holders of disallowed secured claims shall release their liens or reconvey their deed of trust within 30-days of the Effective Date of this Plan.

(L) Debtor shall retain any and all claims and causes of actions they have or could assert against any party, including but not limited to any and all claims or causes of action set forth in its filed bankruptcy schedules and statement of financial affairs, as may hereinafter be amended or supplemented.

(M) <u>Non-Consensual Confirmation under 11 U.S.C. § 1191(b)</u>.  Notwithstanding the provisions of 11 U.S.C. § 1194(b), if the Plan is confirmed under 11 U.S.C. § 1191(b): (1) the Debtor will make all payments to creditors required under the Plan; and (2) the Subchapter V Trustee shall not be terminated pursuant to Section 1183(c).

(N) <u>Substantial Consummation.</u>  In accordance with 11 U.S.C. § 1102(2)(C), the Plan shall be deemed Substantially Consummated upon the commencement of distributions under the Plan. In the event the Plan is confirmed under 11 U.S.C. § 1191(a), Debtor shall file a notice of Substantial Consummation in

Case 24-50103-hlb    Doc 57    Entered 05/01/24 17:35:34    Page 10 of 17

| Debtor | **PINNACLE GRINDING AND GROOVING, LLC** | Case number (*if known*) | **24-50103-hlb** |
|---|---|---|---|
| | Name | | |

accordance with 11 U.S.C. § 1183(c)(2).

(O) <u>Notice of Effective Date.</u>  Debtor shall file a notice of the Effective Date of the Plan within 2-days after the Effective Date.

Respectfully submitted,

**X  /s/  Travis Brandt**
[Signature of the Plan Proponent]

**TRAVIS BRANDT, Manager**
[Printed name]

**X  /s/ Kevin A. Darby**
[Signature of the Attorney for the Plan Proponent]

**KEVIN A. DARBY, ESQ.
(NV Bar # 7670)**
[Printed name]

Debtor **PINNACLE GRINDING AND GROOVING, LLC**  Case number (*if known*) **24-50103-hlb**
  Name

**Exhibit 1: Liquidation Analysis for Debtor**

|     | **Asset Description** | | **Liquidation Value** | **Secured Debt** | **Net Liquidation Value** |
|-----|---|---|---:|---:|---:|
| a.  | Cash in Bank Accounts | $ | 25,000 | >25,000 | 0 |
| d.  | Accounts Receivable | $ | 25,000 | >25,000 | 0 |
| c.  | Office Furniture, Computers and Equipment | $ | 4,500 | >4,500 | 0 |
| d.  | 2012 Freightliner Cascadia | $ | 2,500 | >2,500 | 0 |
| e.  | 1992 Freyhauf Prue Bulk Tanker T100 | $ | 3,000 | >3,000 | 0 |
| f.  | 1996 Prue Bulk Tanker T-101 (Totaled) | $ | 0 | 0 | 0 |
| g.  | 1966 T-63 Hyster Low Boy Truck | $ | 1,000 | >1,000 | 0 |
| h.  | 1963 Hystyer Flat Bed Trailer | $ | 500 | >500 | 0 |
| I,  | 2014 GMC Sierra Truck | $ | 12,000 | >12,000 | 0 |
| j.  | 2001 Ford F550 Mechanic Truck | $ | 2,500 | >2,500 | 0 |
| k.  | 2012 Freightliner Cascadia 125 | $ | 15,000 | >15,000 | 0 |
| l.  | 2006 Traileze Trailer | $ | 5,000 | >5,000 | 0 |
| m.  | 2000 National Carrier Trailer | $ | 5,000 | >5,000 | 0 |
| n.  | 2006 Chevy Silverado | $ | 2,000 | >2,000 | 0 |
| o.  | 2000 Isuzu NPR Sweeper Truck (Inoperable) | $ | 0 | 0 | 0 |
| p.  | 1983 Profleet Trailer | $ | 1,000 | >1,000 | 0 |
| q.  | 1994 Holden Flat Bed Trailer | $ | 1,500 | >1,500 | 0 |
| r.  | 1983 Perfection Trailer | $ | 500 | >500 | 0 |
| s.  | 2007 Chevy Silverado | $ | 1,500 | >1,500 | 0 |
| t.  | 1984 Freightlinder Water Tanker | $ | 500 | >500 | 0 |
| u.  | 2005 Chevy Silverado (Inoperable) | $ | 100 | >100 | 0 |
| v.  | 1963 Myster Trailer | $ | 3,000 | >3,000 | 0 |
| w.  | 1978 Trim Recycler Tanker (Inoperable) | $ | 500 | >500 | 0 |
| x.  | Bumb Grinder Truck | $ | 4,000 | >4,000 | 0 |
| y.  | 1997 GMC W4 Paint Truck | $ | 25,000 | >25,000 | 0 |
| z.  | 2006 International 4300 Melter | $ | 30,000 | >30,000 | 0 |
| aa. | 2009 Peterbuilt 320 Semi | $ | 45,000 | >45,000 | 0 |
| bb. | 2013 Long Line Thermo | $ | 150,000 | >150,000 | 0 |
| cc. | Bobcat | $ | 1,500 | >1,500 | 0 |
| dd. | Bridge Deck Groover | $ | 1,000 | >1,000 | 0 |
| ee. | Skid Tester Truck | $ | 7,500 | >7,500 | 0 |
| ff. | PC 5000 Grinder | $ | 80,000 | >80,000 | 0 |
| gg. | 2019 Hog Technologies Rumbler | $ | 325,000 | >325,000 | 0 |
| hh. | BGP Profile Grinder | $ | 10,000 | >10,000 | 0 |
| ii. | PG5 Profile Grinder | $ | 10,000 | >10,000 | 0 |
| jj. | PG10 Bump Grinder | $ | 7,500 | >7,500 | 0 |
| kk. | PG7 Profile Grinder | $ | 5,000 | >5,000 | 0 |
| ll. | 2009 Jamaco RS20B Rumble Strip Machine | $ | 25,000 | >25,000 | 0 |
| mm. | 840 & 841 Tractors | $ | 30,000 | >30,000 | 0 |
| **Total:** | | **$** | **933,100** | **>933,100** | **0** |
| Less: | Chapter 11 administrative expenses | | | | 25,000 |
| Less: | Priority pre-petition tax claims | | | | 1,800 |
| Less: | Chapter 7 trustee's fees | | | | 1,000 |
| **Total** | Chapter 7 claims with priority | | | | **27,800** |

(1) Funds Available for non-priority unsecured claims     $     0

(2) Total dollar amount of filed non-priority unsecured claims     $     4,236,202

Official Form 425A    Plan of Reorganization for a Small Business Under Chapter 11 for GILLIAM CONSTRUCTION, INC.    page 11

Debtor **PINNACLE GRINDING AND GROOVING, LLC**  
Name

Case number (*if known*) **24-50103-hlb**

| | | |
|---|---|---|
| **Percentage of claims which unsecured creditors would receive or retain in a chapter 7 liquidation:** | % | 0 |
| **Estimated Percentage of claims which unsecured creditors will receive or retain under the Plan:** | % | 3.5 |

Debtor   **PINNACLE GRINDING AND GROOVING, LLC**                     Case number (*if known*) **24-50103-hlb**
         Name

**Exhibit 2: Financial Projections for Debtor**

Debtor projects it will have average gross monthly revenues of $225,000 going forward.  Debtor's projections are based on its current and historical income, while also taking into account seasonal variations. Debtor projects going forward monthly expenses, before payments to be made under this Plan, will average a total of $207,270 as follows:

| **Expense:** | **Monthly Average:** |
|---|---|
| Insurance | $35,000 |
| Payroll this INCLUDES Taxes/Overhead | $96,500 |
| Maintenance and Repair | $17,500 |
| Blade Cost (IH 20 Project) | $17,500 |
| Pavement Markers | $12,000 |
| Lodging (3 rooms/day x $150/room) | $10,000 |
| Fuel ($500/Day) | $11,000 |
| Rental Yard | $2,500 |
| Reno Office | $2,000 |
| IT Services | $750 |
| Office Supplies | $500 |
| Other Taxes, Fees and Tolls | $2,000 |
| **Total Expenses:** | **$207,270** |

Debtor projects it will have **$2,228 per month in Disposable Income** summarized as follows:

| | |
|---|---|
| Projected Gross Monthly Income | $225,000 |
| Projected Monthly Expenses | ($207,270) |
| Projected Secured Debt Service under Plan | ($15,130) |
| Projected Priority Tax Claims Payment under Plan | ($100) |
| Projected Monthly *Disposable Income:* | **$2,500** |

**Exhibit 3: Allowed Class 9 Non-priority General Unsecured Claims**

| PROOF OF CLAIM NO. | CREDITOR | ALLOWED CLASS 9 CLAIM | PRO RATA SHARE |
|---|---|---|---|
| 1-1 (Reclassified Class 6 Claim) | First-Citizens Bank & Trust | $14,260 | 0.34% |
| 2-1 (Reclassified Class 7 Claim) | First-Citizens Bank & Trust | $19,715 | 0.47% |
| 3-1 | Sunstate Equipment Co., LLC | $16,733 | 0.40% |
| 4-1 | The Ohio Casualty Insurance Company | $459,438 | 11.01% |
| 5-1 | Husqvarna Construction Products | $51,354 | 1.23% |
| 6-1 | MFA Oil Company | $702 | 0.02% |
| 7-1 | R&R Gas and Equipment, Inc. | $6,848 | 0.16% |
| 8-1 | Euler Hermes agent for Geveko Markings Inc. | $73,894 | 1.77% |
| 9-1 | Zurich American Insurance Company | $1.00 | 0.00002% |
| 10-1 (Reclassified Class 3 Claim) | U.S. Bank, N.A. d/b/a U.S. Bank Equipment Finance | $16,896 | 0.40% |
| 11-1 | ARC Management, LLC (for Flyers Energy) | $30,805 | 0.74% |
| 12-1 | Elite Asphalt, LLC | $93,196 | 2.23% |
| 14-1 | United Rentals | $273,017 | 6.54% |
| 15-1 | Centerline Supply, Inc. | $2,291 | 0.05% |
| 16-1 | Capital One N.A. by American InfoSource as agent | $88,861 | 2.13% |
| 17-1 | Bettis Asphalt & Construction, Inc. | $164,171 | 3.93% |
| 18-1 | Swarco Reflex, LLC | $40,579 | 0.97% |
| 19-1 (Reclassified Class 8 Claim) | Pawnee Leasing Corporation | $282,249 | 6.76% |
| 20-1 (Reclassified Class 5 Claim) | Channel Partners Capital, LLC | $19,715.19 | 0.47% |
| 22-1 | American Contractors Indemnity Company | $5,136 | 0.12% |
| 23-1 (Reclassified Class 2 Claim) | GreatAmerica Financial Services Corporation | $61,670 | 0.00% |
| 24-1 | Ennis-Flint Inc. | $36,946 | 0.89% |
| 25-1 | ABSL Construction | $42,330 | 1.01% |
| 26-1 | Buyers Barricades – DFW Baker | $79,462 | 1.90% |
| 27-1 | Buyers Barricades – Houston | $45,540 | 1.09% |
| 28-1 | Herc Rentals | $25,242 | 0.60% |

Debtor  **PINNACLE GRINDING AND GROOVING, LLC**              Case number (*if known*)  24-50103-hlb
        Name

| | | | |
|---|---|---|---|
| Schedule D (Line 2.7) (Reclassified Class 4 Claim) | United States Small Business Administration | $920,135 | 22.04% |
| Schedule F (Line 3.3) | Bank of America | $114,000 | 2.73% |
| Schedule F (Line 3.4) | Bank of America | $18,000 | 0.43% |
| Schedule F (Line 3.5) | Bayareafastrak.org | $19 | 0.0005% |
| Schedule F (Line 3.7) | Blueridge Transportation Group | $0 | 0.00% |
| Schedule F (Line 3.8) | BTG Violations | $46 | 0.00% |
| Schedule F (Line 3.12) | CLC | $12,081 | 0.29% |
| Schedule F (Line 3.13) | Comcast | $1,289 | 0.03% |
| Schedule F (Line 3.14) | Cowin Equipment Company, Inc. | $3,318 | 0.08% |
| Schedule F (Line 3.15) | DLL Financial Solutions | $139 | 0.003% |
| Schedule F (Line 3.16) | Drug & Alcohol Testing | $525 | 0.01% |
| Schedule F (Line 3.19) | Epoplex | $317,472 | 7.60% |
| Schedule F (Line 3.21) | Flyers Energy | $25,154 | 0.60% |
| Schedule F (Line 3.22) | Flyers Energy | $30,805 | 0.74% |
| Schedule F (Line 3.23) | Gerken Rent-All-Paola | $59,508 | 1.43% |
| Schedule F (Line 3.25) | Harris County Toll Road Authority | $53 | 0.001% |
| Schedule F (Line 3.26) | HCC Surety Group | $6,703 | 0.16% |
| Schedule F (Line 3.27) | HCTRA-Violations | $13 | 0.0003% |
| Schedule F (Line 3.29) | HOG Technologies | $15,163 | 0.36% |
| Schedule F (Line 3.30) | HTBC Equipment | $4,330 | 0.10% |

Debtor **PINNACLE GRINDING AND GROOVING, LLC**  Case number (*if known*) __24-50103-hlb__
      Name

| | | | |
|---|---|---|---|
| Schedule F (Line 3.32) | Illinois Tollway | $470 | 0.01% |
| Schedule F (Line 3.33) | International Grooving & Grinding Ass. | $1,500 | 0.04% |
| Schedule F (Line 3.34) | Jamie Gunderson | $4,600 | 0.11% |
| Schedule F (Line 3.35) | Kansas Turnpike Authority | $243 | 0.01% |
| Schedule F (Line 3.36) | Lancaster Safety | $3,765 | 0.09% |
| Schedule F (Line 3.37) | Limitless Parts Company Inc. | $2,862 | 0.07% |
| Schedule F (Line 3.38) | LROD Enterprises | $22,051 | 0.53% |
| Schedule F (Line 3.39) | Mark Rite Lines Equipment Co. | $1,755 | 0.04% |
| Schedule F (Line 3.40) | Martin Asphalt Company | $2,252 | 0.05% |
| Schedule F (Line 3.41) | Maupin, Cox & Legoy | $350 | 0.01% |
| Schedule F (Line 3.43) | North Texas Tollway Authority | $91 | 0.002% |
| Schedule F (Line 3.44) | Northwest Drive Train Service | $4,170 | 0.10% |
| Schedule F (Line 3.45) | NV SOS Portal | $350 | 0.01% |
| Schedule F (Line 3.47) | Oklahoma Turnpike Authority | $4,030 | 0.10% |
| Schedule F (Line 3.48) | Old Republic Surety Group | $100 | 0.002% |
| Schedule F (Line 3.49) | OTA-PlatePay | $40 | 0.001% |
| Schedule F (Line 3.50) | Ozark Materials LLC | $458,263 | 10.98% |
| Schedule F (Line 3.51) | Penske Truck Leasing | $468 | 0.01% |
| Schedule F (Line 3.52) | Professional Traffic Control LLC | $45,876 | 1.10% |
| Schedule F (Line 3.53) | R & R Fleet Services | $9,745 | 0.23% |
| Schedule F (Line 3.54) | R & R Gas and Equipment | $2,260 | 0.05% |

| Debtor | **PINNACLE GRINDING AND GROOVING, LLC** | Case number (*if known*) | **24-50103-hlb** |
|---|---|---|---|
| | Name | | |

| | | | |
|---|---|---|---|
| Schedule F (Line 3.55) | R.B, Everett & Company | $28,666 | 0.69% |
| Schedule F (Line 3.56) | Riggs Cat | $1,832 | 0.04% |
| Schedule F (Line 3.57) | Shred It Reno | $296 | 0.01% |
| Schedule F (Line 3.58) | Sierra Office Solutions | $1,338 | 0.03% |
| Schedule F (Line 3.59) | Silver Creek Materials | $2,120 | 0.05% |
| Schedule F (Line 3.60) | Sinnett Consulting Services, Inc. | $275 | 0.01% |
| Schedule F (Line 3.61) | Smith Surface Preparation Systems | $2,143 | 0.05% |
| Schedule F (Line 3.62) | Southern Tire Mart | $23,252 | 0.56% |
| Schedule F (Line 3.63) | Specialty Rental Services | $4,364 | 0.10% |
| Schedule F (Line 3.64) | Sun Coast Resources, Inc. | $5,377 | 0.13% |
| Schedule F (Line 3.67) | Texas Belting | $1,097 | 0.03% |
| Schedule F (Line 3.68) | Texas First Rentals | $16,247 | 0.39% |
| Schedule F (Line 3.69) | Texas Site Services | $2,775 | 0.07% |
| Schedule F (Line 3.70) | The Epstein Law Firm LLC | $1,214 | 0.03% |
| Schedule F (Line 3.71) | The Standard Fire Insurance Company | $12,490 | 0.30% |
| Schedule F (Line 3.72) | Tires 1st of Miller Road | $535 | 0.01% |
| Schedule F (Line 3.73) | Traffic Signs and Lines | $37,996 | 0.91% |
| Schedule F (Line 3.74) | TXTag | $399 | 0.01% |
| Schedule F (Line 3.76) | VCS Holdings LLC | $48,300 | 1.16% |
| Schedule F (Line 3.77) | Whitely & Siddons | $441 | 0.01% |
| | Total: | **$4,236,202** | **100%** |